UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

JACQUELINE GOMEZ and
YASHIRA CURRASCO,

              Plaintiffs,

    -against-

LACE ENTERTAINMENT, INC., *et al.*

             Defendants.

_____x

No. 15 Civ. 3326 (CM)

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED:  1/6/17         │
└─────────────────────────────┘
```

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

McMahon, C.J.:

Plaintiffs Jacqueline Gomez and Yashira Currasco commenced this putative class and collective action on April 29, 2015 claiming that Defendants – MLB Enterprises, Corp. (d/b/a Lace Gentlemen's Club) and Anthony Capeci – violated various provisions of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Gomez now moves pursuant to the Federal Rule of Civil Procedure 23(a) and (b)(3) for class certification on her NYLL claims, defining the class as those Lace Gentlemen's Club employees who worked as waitresses on or after April 29, 2009. For the reasons set forth below, the motion is GRANTED and a liability-only class is hereby certified.

### PROCEDURAL HISTORY

Plaintiffs Jacqueline Gomez and Yashira Carrasco filed a Complaint on April 29, 2015 (Dkt. No. 1). On June 11, 2015, Defendants moved to dismiss and/or compel Gomez and Carrasco to arbitration (Dkt. No. 21). On August 18, 2015, this Court granted the motion to

compel arbitration of Carrasco's claims and stayed the instant action against her; the Court denied the motion to dismiss and to compel arbitration of Gomez's claims (Dkt. No. 54). On August 4, 2015, the Court so-ordered a voluntary stipulation of dismissal as to Defendant Lace Entertainment Inc., after finding that it had been sued in error (Dkt. No. 42).

On November 20, 2015, the Court granted Gomez's motion for conditional certification of the proposed FLSA Section 216(b) class (Dkt. No. 79). Thereafter, Defendants identified 97 members of the putative FLSA collective; these were individuals who worked as waitresses at Lace Gentleman's Club beginning in April 30, 2012. (*See* Declaration of Rebecca Predovan in Supp. of Pl's Mot. For Class Certification ("Predovan Decl.") ¶ 17.) After counsel for Gomez gave notice to all putative collective members, 13 individuals (not including Gomez) opted into this action. (*See* Dkt. Nos. 65, 68, 84-86, 91, 93, 95.)

Defendant Anthony Capeci was deposed on March 18, 2016, and class discovery closed on April 29, 2016 (Dkt. No. 97). Thereafter, Gomez filed this motion seeking class certification of the NYLL claims alleged in her Complaint pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## BACKGROUND

### 1. The Parties

Proposed class members are current and former employees of Lace Gentlemen's Club (or "Lace"). These members either worked or work as waitresses at Defendants' single location club at 725 7th Avenue in Manhattan.

Defendant MLB Enterprises, Corp. owns and operates Lace Gentlemen's Club. (Compl. ¶ 29.)

2

Defendant Anthony Capeci is a New York resident and is the sole owner of Lace Gentlemen's Club. (Compl. ¶¶ 45, 47-50.)

## 2. Defendants' Allegedly Illegal Policies

Gomez alleges that Defendants, in violation of the NYLL: (1) required waitresses to participate in a tip share that included non-service employees; (2) took an illegal 15% deduction from credit card gratuities; (3) failed to compensate for expenses related to maintaining their uniforms; (4) failed to provide an annual notice or an accurate wage statements detailing all tips and/or deductions take by Lace; and (5) improperly took a tip credit against the minimum wage of its wait staff.

### A. Tip Sharing

The NYLL prohibits employers from, directly or indirectly, retaining, demanding or accepting, any part of a gratuity or of any charge purported to be a gratuity, received by an employee. 12 N.Y.C.R.R. § 196-d. Moreover, the NYLL prohibits employers from requiring tipped employees to share tips with non-service employees or managers. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011). Under § 196-d, a non-service employee is one who cannot receive tips and has only "de minimis," "occasional or incidental" customer interaction. N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-2.14.

Gomez alleges that Defendants had a mandatory tip share policy whereby Defendants retained for themselves 15% of all credit card tips earned by waitresses and deducted an additional 15% of these credit card tips for distribution to non-service employees such as barbacks and bartenders. (Predovan Decl., Ex. 13 at 21, 39, 47-48.) Additionally, Defendants allegedly collected and distributed 20% of all cash tips to bartenders and paid an additional $10.00 a day to barbacks.

3

Defendant Capeci testified that the club's bartenders and barbacks do not directly serve

patrons:

> Q. What is the service bar?
> A. It's a bar where the bartender makes drinks, but there's no customers sitting at the bar.
> Q. So there's no barstools?
> A. No barstools.
> Q. You can't get a drink at the bar; you can['t] get a drink in the seat?
> A. You can only order through a waitress.

(*Id.* at 33-34.)

Capeci also described duties of bartenders and barbacks as follows:

> Q. What were the bartender's duties and responsibilities since you've had the service bar?
> A. Basically, they make the drinks and run the credit cards for customers.
> Q. But no customers go to the bar; they have to go through the waitress pretty much?
> A. Ninety-nine percent of the time.

(*Id.*)

> Q. Now, the bar-backs, did they have essentially the same duties and responsibilities from
> 2009 to the present?
> A. Yes.
> Q. What were their duties and responsibilities?
> A. They would make sure that the bar is stocked. If, for example, you run out of Grey
> Goose, they would go down into the basement to go get it for the bartender. They would
> also clear tables. If a customer left drinks, they would clear the tables, put them in the
> dishwasher. And then general cleaning of, you know, keeping the place neat.

(*Id.* at 35.)

Moreover, Capeci stated that Defendants received 15% of all gratuities earned by waitresses:

> Q. [Y]our answer to D. It says, "The percentage of credit-card tips that were paid to the
> club" --
> A. Fifteen percent.
> Q. – "15 percent." So that was taken from the credit-card receipts?
> A. Yes.

(*Id.* at 39.)

### B. Uniform Maintenance Expenses

Under the NYLL, where an employer does not maintain required uniforms for an employee, the employer shall pay the employee, in addition to the employee's agreed rate of pay, uniform maintenance pay. N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.7. Gomez alleges that Defendants caused waitresses to incur the cost of maintaining their uniforms and did not compensate them for these costs.

### C. Wage Statements

The NYLL also requires employers to provide employees with a wage statement with every payment of wages, listing any deductions. N.Y.L.L. § 195(3). Until the requirement was repealed on February 27, 2015, the NYLL also required employers to provide employees, at the time of hire and in each subsequent year of employment, an annual notice stating any allowances claimed as a part of the minimum wage. N.Y.L.L. § 195(3).

Gomez alleges that Defendants knowingly and willfully failed to provide a wage statement that accurately reflected cash tips and any tip deductions. She further alleges that Defendants failed to provide waitresses, either at the time of hire or annually thereafter, with any annual notices stating allowances, including tip allowances, claimed as a part of the minimum wage.

### D. Minimum Wage

"Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015); 29 U.S.C. §§ 203(m), 206(a)(1); 12 N.Y.C.R.R.

§ 146–1.3(b) (effective Jan. 1 2011). This allowance against the minimum wage is known as a "tip credit."

Gomez argues that Defendants paid waitresses an hourly wage that was below the minimum wage. She asserts that on days in which a waitress would make less than $30.00 in tips, she was still required by Defendants to pay bartenders a minimum of $20.00 through the tip share and to pay the barbacks a minimum of $10.00, even if this meant paying them with her own funds. In these circumstances, Defendants allegedly took a tip credit allowance without fulfilling federal and state law requirements for claiming such an allowance. Gomez contends that Defendants are not entitled to the tip credit for hours worked by waitresses, because Defendants failed to provide notice of the tip share and to provide accurate wage statements listing all tips and corresponding deductions.

### 3. The Proposed Class

Gomez describes the proposed class members as "all waitresses that [sic] worked for Defendants at any time on or after April 29, 2009 at Lace Gentlemen's Club." (Pl's Mem. of Law at 3.) Gomez asserts that from 2009 to the present, all waitresses at Lace had the same duties and responsibilities, which "consist[ed] primarily of serving drinks to Lace's patrons," and were paid in the same way. (*Id.* at 2.)

## LEGAL STANDARD

### 1. Rule 23(a)

In order to obtain class certification under Federal Rule of Civil Procedure 23, the class proponent bears the burden of showing that *each* of the requirements of subsection 23(a)—numerosity, commonality, typicality, and adequacy of representation—is, in fact, satisfied. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d

Cir. 2008); *see also Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). The numerosity requirement provides that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotations omitted); Fed. R. Civ. P. 23(a)(2). Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members. Fed. R. Civ. P. 23(a)(3). This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted). The adequacy requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see generally Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).

As the Supreme Court recently observed, the Rule 23(a) prerequisites "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 131 S. Ct. at 2550 (internal citations and quotation marks omitted). If even one of the Rule 23(a) requirements is not met, certification must be denied.

In addition, while Rule 23(a) does not expressly require that a class be definite in order to be certified, "There is an implied requirement that the membership of the class is identifiable and ascertainable." *Jankowski v. Castaldi*, No. 1 Civ. 0164 (SJF) (KAM), 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006) (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig. (In re MTBE)*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002)); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 337 (S.D.N.Y. 2004).

7

### 2. Rule 23(b)

In addition to satisfying the Rule 23(a) prerequisites, the class proponent must qualify the proposed class under one of the three subsection 23(b) categories. *Brown*, 609 F.3d at 476. Here, Gomez relies on subsection (b)(3).

Under subsection (b)(3), class certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). "As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (internal quotation marks omitted).

Courts determine whether Rule 23(b)(3) certification is appropriate by considering:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

*Oakley v. Verizon Commc'ns Inc.*, No. 09 Civ. 9175 CM, 2012 WL 335657, at *12 (S.D.N.Y. Feb. 1, 2012).

### 3. Burden of Proof

A district court must conduct a "rigorous analysis" to determine whether all the requirements of Rule 23 have been met. *Gen. Tel.*, 457 U.S. at 160-61. In the Second Circuit, factual findings necessary to this determination are made under the preponderance of the

8

evidence standard. "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010); *Teamsters*, 546 F.3d at 202-03 ("The preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."). The same standard applies whether the issue is independent of or overlaps with a merits issue in the case. *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006). That said, "[a] motion for class certification should not . . . become a mini-trial on the merits." *Lewis Tree Serv., Inc. v. Lucent Techs.*, 211 F.R.D. 228, 231 (S.D.N.Y. 2002). "The dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Kowalski v. YellowPages.com, LLC*, No. 10 Civ. 7318 PGG, 2012 WL 1097350, at \*12 (S.D.N.Y. Mar. 31, 2012) (quoting *Lucent Techs.*, 211 F.R.D. at 231). The certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court. *Id.* at 41.

In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide "whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common*." *Myers*, 624 F.3d at 549 (emphasis added).

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Espinoza v. 953 Associates LLC*, No. 10 Civ. 5517 SAS, 2011 WL 5574895, \*6 (S.D.N.Y. Nov. 16, 2011) (quoting *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009)).

9

## DISCUSSION

## 1. Plaintiff Has Satisfied the Rule 23(a) Requirements

### A. Numerosity

Generally, a class composed of more than 40 members satisfies the numerosity requirement. *Cons. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), *cert. denied*, 515 U.S. 1122 (1995). "Although a plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts, the movant must show some evidence of or reasonably estimate the number of class members." *Noble*, 224 F.R.D. at 338 (internal citations and quotation marks omitted). "Although evidence of exact size or identity of class members is not required, evidence of numerosity is nonetheless required." *Lewis v. Nat'l Fin. Sys., Inc.*, No. 06-1308, 2007 WL 2455130, at *8 (E.D.N.Y. Aug. 23, 2007) (internal citation omitted). Where a plaintiff's assertions of numerosity are based on pure speculation or bare allegations, the motion for class certification must fail. *See id.*

Plaintiffs aver that there are at least 40 individuals in their proposed class, and that this Court should thus presume numerosity.

Under the NYLL, the Class Period commenced on April 29, 2009 and extends until the present. Plaintiff submits evidence, in the form of employee earnings records produced by Defendants, (*see* Predovan Decl. ¶ 17, Ex. 16(a), Ex. 16(b)), that during a later part of the Class Period – from April 29, 2013 to November 30, 2015 – 97 women worked as waitresses at Lace Gentlemen's Club. Defendants insist that the real number of waitresses for this period is 47 – because of duplications in the list of employees and because some unidentified number of individuals listed were not actually waitresses (they were allegedly either "male hosts" or "other

10

miscellaneous employees who did not work as waitresses.") (Defs.' Mem. of Law in Opp'n at 4.)

Defendants also argue that only 16 of those individuals could possibly be class members,

because three have settled their individual claims and 28 have signed agreements requiring them

to arbitrate their claims.

Assuming, *arguendo*, that Defendants are correct that the number of waitresses employed

by Lace during a part of the Class Period was 47, rather than 97, Plaintiff has still met its burden

as to numerosity, because the issue is how many waitresses worked for Lace during the entire

Class Period, not just a part of it. Capeci testified that the number of waitresses employed by

Lace during the entire Class Period who did not sign arbitration agreements was between 100

and 150:

> Q: At some point in time, you sent out letters to some or all of the waitresses, where you
> could find their addresses, to pay them $500 to release any claims against MLB; is that
> correct?
> A: Yes.
> Q: How many such letters did you send out, approximately?
> A: I don't know the number. To everyone who we did not have an arbitration agreement
> for.
> Q: How many would that be, approximately?
> A: I don't remember now exactly, 100, 150 somewhere.

(Predovan Decl., Ex. 13 at 97.)

From prior proceedings in this case, the Court knows that Lace did not begin requiring

waitresses to sign arbitration agreements until September 2014. (*See* Dkt. No. 54.) That means

that well over 40 Lace waitresses are *not* subject to arbitration agreements and can be members

of the NYLL class extending back to the year 2009.

Therefore, the proposed class is sufficiently numerous.

11

## B. Commonality and Typicality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," whereas Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." "As a practical matter, the two requirements tend to merge in the Second Circuit's class certification inquiry." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. 2007) (citing *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999)). "The commonality and typicality requirements, together, require Plaintiffs to show that they raise questions of fact or law, arising out of a single course of conduct or set of events, that are common to all putative class members and that their individual claims and circumstances are sufficiently similar to those of the absent class members so as to ensure that the named plaintiffs will press the claims of all class members." *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97 (S.D.N.Y. 2010). "Plaintiffs must produce some 'quantum of evidence to satisfy the commonality and typicality requirements, usually in the form of affidavits, statistical evidence, or both, tending to show the existence of a class of persons affected by a company-wide policy or practice of discrimination.'" *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *6 (quoting *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 95 (S.D.N.Y. 2006)).

Rule 23(a)(2) and (3) analysis has become stricter in light of the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). *Dukes* instructs district courts that "What really matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551 (internal quotation and citation omitted). Therefore, in order for there to be a legitimate "cause to believe that all [of a proposed

12

class'] claims can productively be litigated at once," not only must those claims depend on a common contention, but that "common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Even so, "[t]he weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases." *Morris v. Affinity Health Plan, Inc.*, No. 09 Civ. 1932 ALC, 2012 WL 1608644, at *2 (S.D.N.Y. May 8, 2012) (collecting cases). Courts in this district have instead focused on whether the employer had company-wide wage policies that injured the proposed class. *See, e.g.*, *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) ("Unlike the claims in *Wal-Mart*, Plaintiffs' NYLL claims do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights.") (quotations and citation omitted); *Espinoza*, 2011 WL 5574895, at *12 (distinguishing *Dukes*, and finding that plaintiffs' claims that "Defendants failed to pay minimum wages and overtime compensation as a result of certain policies and practices . . . alleged a common injury that is capable of class-wide resolution"). And "claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." *Espinoza*, 2011 WL 5574895, at *9 (collecting cases).

With regard to the proposed class, Gomez's claims and the claims of putative class members arise from alleged common wrongs: Defendants' failure to comply with the NYLL's minimum wage requirements, tip sharing restrictions, and wage statement and uniform maintenance expense rules. The evidence that Gomez has produced is sufficient to demonstrate –

13

by a preponderance – that Defendants have (or at relevant times had) common policies concerning these issues, which affected all the proposed class members.

Courts in this Circuit have routinely found that commonality and typicality is satisfied where, as here, Defendants have a uniform policy, practice, and/or procedure of retaining employee gratuities for the house, implementing a tip share with ineligible employees, and failing to ensure that employees receive the minimum wage for all hours. *See e.g.*, *Shahriar*, 659 F.3d at 252 (concluding that commonality is satisfied "since the Plaintiffs' NYLL class claims all derive from the same compensation policies and tipping practices . . . . [and] all of the class plaintiffs' claims arise under the same New York State statutes and regulations"); *Flores*, 284 F.R.D. at 125-26 (finding commonality for subclass satisfied where its claims arose from common wrongs resulting from defendants' tip sharing rules and payroll dictates); *Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114, 124 (S.D.N.Y. 2014) (noting that allegation that tip share participant is not tip eligible is "'capable of classwide resolution' as its 'truth or falsity will resolve [the] issue . . . in one stroke.'") (quoting *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551); *Hart v. Rick's Cabaret Intern., Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014), *cert. of appeal denied,* 73 F. Supp. 3d 382 (S.D.N.Y. 2014) (finding commonality in wage and hour class action brought by exotic dancers where challenged practices were not implemented nationwide but were confined to a single New York City nightclub, were governed by a single federal law and a single state's labor laws, and every significant question of law and fact related to liability was common to class).

Defendants do not bother to contest that they have or had these common policies regarding the proposed class. They do not dispute that "all of the proposed class members would rely on the same allegedly wrongful conduct of the defendants and muster the same legal

14

arguments in support of their New York Labor Law claims." *La Belle Farm*, 239 F.R.D. at 371. Nor do they argue that putative class representatives are subject to unique defenses. *See Espinoza*, 2011 WL 5574895, at *7.

In fact, Defendants have stated that all waitresses were subject to the same pay and tip sharing structure and have never received a written notice of the tip share or any other policy. Specifically, Capeci stated that from 2009 to the present the "essential duties and responsibilities of the waitresses" who worked at Lace were the same – to serve drinks – and that they were all paid in the same way. (Predovan Decl., Ex. 13 at 30-31.) He further testified that all waitresses were part of the same tip sharing and deductions scheme. (*Id.* at 21, 30-31, 86-88.) Declarations by Gomez and opt-in Plaintiffs confirm that putative class members who worked at the Lace Gentlemen's Club were uniformly subject to the employment policies at issue in this case. (*See* J. Gomez Decl. ¶ 15; Romanchenko Decl. ¶ 16; M. Gomez Decl. ¶ 16; Rosario Decl. ¶ 15 ; Hernandez Decl. ¶ 15; Maguire Decl. ¶ 15; Munoz Decl. ¶ 15; Gumerova Decl. ¶ 14; Jimenez Decl. ¶ 16; Gonzalez Decl. ¶ 15; Flores Decl. ¶ 16; Randazzo Decl. ¶ 14.)

Gomez raises common and typical questions about Defendants' general wage and gratuity policies; she has satisfied the commonality and typicality requirements.

### C. Ascertainability

In addition to the explicit Rule 23 requirements, courts in this District have also imposed an implicit "ascertainability requirement" upon the certification process. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d at 30, 44-45; *Stinson v. City of N.Y.*, No. 10 Civ. 4228 RWS, 2012 WL 1450553, at *6 (S.D.N.Y. Apr. 23, 2012); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058 PKC, 2012 WL 370278, at *4 (S.D.N.Y. Feb. 6, 2012); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 305 (S.D.N.Y. 2010);

*Noble*, 224 F.R.D. at 337. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson*, 2012 WL 1450553, at *12 (quoting *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 395 (S.D.N.Y. 2008)). "Where any criterion is subjective, e.g., state of mind, the class is not ascertainable." *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y. 2010) (internal quotation omitted).

In other words, "the ascertainability requirement means that the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Stinson*, 2012 WL 1450553, at *12 (quotations and citation omitted).

The standard for ascertainability "is not demanding." *Gortat v. Capala Bros., Inc.*, No. 7 Civ. 3629 (ILG), 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010). "It is designed only to prevent the certification of a class whose membership is truly indeterminable." *Id.* Further, "[c]lass members need not be ascertained prior to certification, but must be ascertainable at some point in the case." *Noble*, 224 F.R.D. at 338.

Here, the proposed class is ascertainable; it is comprised of all waitresses employed by Lace on or after April 29, 2009. Defendants do not dispute that Plaintiff's proposed class is ascertainable. Membership in the class can clearly be ascertained by objective documentation, such as Defendants' employee payroll records and wage statements, *see Jankowski*, 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006). No subjective criterion is required to determine the class' contours. The fact that an analysis of Defendants' data is necessary does not render the class unascertainable. *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012); *see also Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("The class can be identified through an examination of the individual files of each of the participants.")

16

### D. Adequacy

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is evaluated in two ways: (1) by looking to the qualifications of plaintiff's counsel; and (2) by examining the interests of the named plaintiffs. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Defendants do not contest either prong.

Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253. Here, Plaintiff Jaqueline Gomez is prepared to act as class representative, and there is no indication that she has any conflict with any class member. (Predovan Decl. ¶¶ 19-20.) Additionally, since Gomez was subject to the same common policies and practices as all other proposed class members, the same legal arguments and strategies apply equally to her claims and the claims of the proposed class members. *See Spicer*, 269 F.R.D. at 337 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class" and that the same strategies that will vindicate plaintiffs' claims will also vindicate those of the class.)

More importantly, the sworn affidavit of Gomez demonstrates that she is familiar with and is actively participating in this litigation. Courts in this circuit have found that plaintiffs' affidavits can properly satisfy the adequacy requirement. *See Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 396 (N.D.N.Y. 2011) ("The affidavits of the named plaintiffs exhibit sufficient knowledge concerning the class claims."); *Leone v. Ashwood Fin., Inc.*, 257 F.R.D. 343, 352 (E.D.N.Y. 2009) (finding adequacy, relying in part on plaintiff's "affidavit stating that she understands the responsibilities of a class representative and that she has

17

knowledge of this action"). Gomez's affidavit indicates that she agrees to act as class representative. Gomez has provided several declarations and has testified at an evidentiary hearing in this matter; she remains willing to supply any requested evidentiary support for her individual claims and for the claims of the proposed class.

Finally, Gomez's attorneys at Hepworth, Gershbaum & Roth, PLLC have ample experience litigating class actions, including wage and hour class actions, appear to be familiar with the applicable law, and are qualified to represent the proposed class.

Plaintiff has satisfied the adequacy requirement.

## 2. Plaintiff Has Satisfied the Rule 23(b)(3) Requirements

### A. Predominance

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Thus, "when determining whether common issues predominate, courts focus on the liability issue . . . and if the liability issue is common to the class, common questions predominate over individual ones." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 157-58 (S.D.N.Y. 2002) (citation omitted). Moreover, while a court evaluating whether a movant has satisfied the requirements of Rule 23(b)(3) must examine both the claims and the defenses, the mere fact that a defense "may arise and . . . affect different class members differently does not compel a finding that individual issues predominate over common ones." *Noble*, 224 F.R.D. at 339. The relevant inquiry is "not whether a defense exists, but whether the common issues will predominate over the individual questions raised by that defense." *La Belle Farm*, 239 F.R.D. at 373 (quoting *Noble*, 224 F.R.D. at 339).

In the present case, common questions of liability predominate over individual inquiries.

18

Defendants do not dispute that the proposed class satisfies this requirement. This makes sense, because the issues to be litigated – whether the proposed class members: (1) were paid the minimum wage; (2) had their tips improperly shared and withheld; (3) are owed compensation for uniform expenses; (4) and received inadequate wage statements or annual wage notices – "are about the most perfect questions for class treatment." *La Belle Farm*, 239 F.R.D. at 373. Should this class prevail, any factual variations in the number of hours worked, etc., will go to the issue of damages. *Noble*, 224 F.R.D. at 345. In any case, Defendants do not dispute that the proposed class members satisfy the predominance requirement.

      Thus, I find that the predominance requirement is satisfied.

### B. Superiority

      The last question to be addressed under Rule 23(b) is whether the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "Courts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by Defendant." *Whitehorn*, 275 F.R.D. at 200.

      Defendants contend that since joinder is not impracticable in this case, class action is not the superior method of adjudication. In essence, Defendants' contentions that class action is not the superior method of adjudication are really arguments that the proposed class is not sufficiently numerous.

      Defendants argue that given the "extremely low percentage of former employees who have opted into the conditionally-certified FLSA action, it is not in the interests of judicial economy to certify the class." Defendants are wrong. "Courts in the Second Circuit . . . continue

19

to assess numerosity based on the number of proposed class members rather than the number of opt-ins." *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 275 F.R.D. 75, 83 (N.D.N.Y. 2011); *see also Niemiec v. Ann Bendick Realty*, 1:04 Civ. 00897, 2007 WL 5157027, at *6 (E.D.N.Y. Apr. 23, 2008) ("[T]here are other cases within this circuit supporting a finding of numerosity despite a low number of opt-in plaintiffs when certain mitigating factors are present."); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 342 (S.D.N.Y. 2004) (finding numerosity with several hundred potential class members and only three opt-ins because of employees' fear of reprisal in joining FLSA collective action). Defendants add that the likelihood that the employees who did not opt-in will later file lawsuits against Lace is "extremely low," since these individuals have been notified by Plaintiff of the pending action, have been offered cash settlements, and still have taken no action to either assert or resolve any claims they may have. Defendants assert that if the Court were to certify the class, it would be resolving the claims of parties who have no interest in participating in this lawsuit. Again, Defendants are wrong. In *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. at 346, Judge Scheindlin found class action to be the superior method of adjudication where (1) the proposed class members are "sufficiently numerous" and seem to possess relatively small claims "unworthy of individual adjudication due to the amount at issue"; and (2) where there was "reason to believe that class members may fear reprisal and lack familiarity with the legal system, discouraging them from pursuing individual claims." This case is similar to *Noble*. The proposed class members are sufficiently numerous, as discussed above, and each putative member possesses a relatively small claim. Class members in this case, servers at a gentlemen's club, may lack familiarity with the legal system (even if *former* employees may not fear reprisal). Defendants insist that proposed class members have the ability to pursue and litigate their own individual claims; they point out that several former waitresses, who are

20

represented by Gomez's attorneys, are already doing so. That class members have the mere *ability* to prosecute individual claims does not change the fact that they may be discouraged from doing so due to the relatively minimal value of each claim and their lack of familiarity with the legal system.

Defendants argue that proposed class members are not geographically dispersed – a vast majority of them resides in the greater New York City area. While the geographic concentration of class members may make joinder somewhat practicable, this Court finds that class action is nonetheless the superior method of adjudication of this lawsuit.

For the above reasons, the proposed class is hereby certified pursuant to Rule 23(a) and (b)(3).

### 3.  Plaintiff's Counsel Is Appointed as Class Counsel

Gomez proposes that her attorneys from Hepworth, Gershbaum & Roth, PLLC serve as class counsel. Defendants do not object to Plaintiff's proposal.

Pursuant to Rule 23(g), this Court has considered the work that Plaintiff's counsel has done in identifying and investigating potential claims. Plaintiff's counsel has conducted discovery to identify potential class members, and has diligently prosecuted this action. Moreover, Plaintiff indicates that Hepworth, Gershbaum & Roth, PLLC has "extensive experience litigating class actions, including wage and hour class actions" and have been appointed lead or co-lead class counsel on a number of cases that were resolved favorably for plaintiffs. (Pl's Mem. of Law at 23.) Plaintiff's counsel appears to be familiar with the applicable law and also appears to possess the legal and financial resources necessary to represent the class.

I appoint Gomez's attorneys from Hepworth, Gershbaum & Roth, PLLC as class counsel.

21

## 4. Plaintiff Yashira Carrasco's Claims

In its reply memorandum in support of the motion for class certification, Gomez includes a request asking the Court to modify its August 18, 2015 order and lift the stay on Plaintiff Yashira Carrasco's claims. (*See* Pl's Reply Mem. at 8.) This request is not properly raised in a reply memorandum, and the parties have not had the opportunity to fully brief the issue. Thus, the request will not be considered in this decision.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to certify the class action is GRANTED.

The Defendants are ordered to disclose to the Plaintiff the names, last known addresses, alternate addresses, all telephone numbers, email addresses, positions and dates of employment of all members of the class by 30 days from the date of this Order.

The Clerk is instructed to remove the motion at Docket No. 98 from the Court's list of pending motions.

Dated: January 6, 2017

_____

U.S.D.J.

BY ECF TO ALL COUNSEL

22