UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
╔══════════════════════════════╗
║ USDC SDNY                     ║
║ DOCUMENT                      ║
║ ELECTRONICALLY FILED          ║
║ DOC #:                        ║
║ DATE FILED:  6/5/18           ║
╚══════════════════════════════╝
```

JACQUELINE GOMEZ and YASHIRA CARRASCO,
Individually, and on behalf of all others similarly situated,

Plaintiffs,

-against-

No. 15-cv-3326 (CM)

MLB ENTERPRISES, CORP., d/b/a LACE
GENTLEMEN'S CLUB, MLB ENTERPRISES CORP.,
and ANTHONY CAPECI,

Defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

McMahon, C.J.:

Plaintiffs Jacqueline Gomez and Yashira Carrasco bring this class and collective action against their former employers, MLB Enterprises Corporation ("MLB"), which does business as Lace Gentlemen's Club ("Lace" or the "Club"), and Anthony Capeci, claiming violations of various provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Labor Law §§ 190 *et seq.* & §§ 650 *et seq.*

The parties now cross-move for partial summary judgment.

For the reasons stated below, Defendants' motion for summary judgment is granted in part and denied in part and Plaintiff's motion for partial summary judgment is granted in part and denied in part.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.

1

Plaintiffs are current and former waitresses at Lace, a "gentlemen's club" owned and operated by Defendant Anthony Capeci. (Pls.' Statement of Undisputed Facts ("Pls.' 56.1") ¶¶ 4, 40–45, ECF No. 133-17.) Their primary responsibility was and is to serve drinks to customers. (Pls.' 56.1 ¶ 47.) Because its waitresses routinely receive tips from customers, Lace pays waitresses the minimum wage for tipped customers – a lower rate than the standard minimum wage, 29 U.S.C. § 203(a)(1) and N.Y. Labor Law § 652(4). (Decl. of Jacqueline Gomez Support Pls.' Mot. Summ. J. ¶ 6, ECF No. 133-3; Pls.' 56.1 ¶¶ 31, 41, 49, 82.)

The FLSA and NYLL require that employers who take advantage of these tip credit provisions abide by certain conditions. *See* § 203(a)(1), (m); § 652(4). Plaintiffs contend that Defendants violated these conditions by requiring them to share their credit card tips with non-service employees who are ineligible to share in tips and by unlawfully retaining a portion of the tips for the Club itself.[1]

**Lace's Retention of Waitresses' Tips**

Customers can tip waitresses in cash or by credit card. (Pls.' 56.1 ¶¶ 71–74, 83.) When a customer tips by credit card, Lace deducts 15% of the credit card tip for distribution among the Club's barbacks and bartenders. (*Id.* ¶ 71.) Barbacks at Lace stock the bar, clear tables, wash dishes, and generally clean the Club; they do not serve drinks. (*Id.* ¶¶ 68–70.) Bartenders work the "service bar," meaning that they do not take drink orders directly from customers, and no customers sit at the bar. (*Id.* ¶¶ 65–67.) Customer have to order drinks through waitresses – bartenders make the drinks and process credit card payments. (*Id.* ¶¶ 65, 67.)

---

[1] Plaintiffs have also brought claims related to cash tips and tips they received in the form of "funny money" – a form of in-house cash currency customers can purchase with a credit card to pay for dances from entertainers at the Club – as well as various other FLSA and NYLL claims. (Compl., ECF No. 1.) Plaintiffs have not moved for summary judgment on those claims.

2

After deducting 15% from credit card tips for barbacks and bartenders, Lace retains an additional 15% of the remaining tip for itself – which amounts to 12.75% of the total tip going to the Club. (*Id.* ¶ 15.) Lace's tip sharing policies are mandatory for waitresses. (*Id.* ¶ 86.)

Defendants contend that Lace's barbacks and bartenders are service employees who are eligible to share in tips. With respect to the Club's cut, Defendants essentially acknowledge that Lace's retention of 12.75% of Plaintiffs' is improper. They argue, however, that they are entitled to retain some smaller portion of waitresses' tips to offset credit card fees they are charged. As with all credit card transactions, whenever a Lace customer tips a waitress by card, the credit card company charges a percentage of the payment as a processing fee. (Defs.' Statement of Undisputed Facts ("Defs.' 56.1") ¶ 9, ECF No. 127-1.) In his affidavit in support of Defendants' motion, Mr. Capeci states that Lace's credit card processing fees range between 2.5% and 4.5%, but does not offer any further proof. (Decl. of Anthony Capeci Supp. Defs.' Mot. Partial Summ. J. ¶ 12, ECF No. 127-2.) Plaintiffs dispute this assertion as unsupported any evidence in the record. (Pls.' 56.1 Counter-Statement ¶ 9, ECF No. 139-3.) On reply, Defendants offered two merchant statements. One statement details transactions that American Express processed for MLB Enterprises Corp. between August 1, 2017 and August 31, 2017; the second details credit card transactions processed by all other credit card companies for MLB Enterprises for the month of January 2017. (Defs.' Reply Supp. Mot. Partial Summ. J. 2, ECF No. 142-1.) Plaintiffs, of course, have not had an opportunity to respond to or rebut this new evidence because Defendants first offered it on reply.

**Defendants' Notice and Wage Statement Violations**

Plaintiffs also claim, and Defendants do not dispute, that Lace failed to abide by some of the NYLL's notice requirements. NYLL § 195(1) requires employers to provide employees with a notice when they are hired, which lists the employee's wages, the tip credit the employer intends

3

to claim, and the employer's name, address, and phone number. Lace never provided Plaintiffs with such a notice, at the time of hire or at any point after. (Pls. 56.1 ¶ 57.) Furthermore, while Lace did provide Plaintiffs with paystubs, the paystubs did not include the tip credits the Club was claiming or the deductions Defendants made from Plaintiffs' tips as required by NYLL § 195(3). (*Id.* ¶ 56.)

Defendant Capeci, who owns Lace and is a Certified Public Accountant, sets the wages for the Club's employees, creates the Club's tip sharing policies, is responsible for maintaining employee records. (*Id.* ¶ 42–45.) Mr. Capeci testified at his deposition that he studies the "Business practices of other people in the industry, [has] discussions with various labor auditors," and reviews "notices" that he receives "from various websites" as a CPA, in order to ensure Lace's compliance with employment laws. (Dep. of Anthony Capeci ("Capeci Dep.") 61:5–24, ECF No. 133-2.)

**Procedural History**

Plaintiffs Jacqueline Gomez and Yashira Carrasco filed this action on April 29, 2015. (ECF No. 1.)

On June 11, 2015, Defendants moved to compel arbitration and dismiss the complaint, asserting that both named plaintiffs, Ms. Gomez and Ms. Carrasco, signed arbitration agreements that require them to adjudicate employment-related claims against Defendants through arbitration. The agreements provide that:

> The partiers hereto agree that any controversy, dispute or claim arising out of Employee's employment at the Company or its affiliates, whether contractual, in tort, or based upon statute shall be exclusively decided by binding arbitration held pursuant to the Federal Arbitration Act A[ct] ("FAA") before the American Arbitration [Association] ("AAA") in New York County and shall be administered by a neutral arbitrator agreed upon by the parties pursuant of the AAA's rules and that the arbitrator shall be permitted to award any relief available in a court of law....

4

....THE UNDERSIGNED EMPLOYEE UNDERSTANDS AND ACKNOWLEDGES THAT BY SIGNING THIS AGREEMENT THE UNDERSIGNED EMPLOYEE SPECIFICALLY WAIVES ANY RIGHT TO PARTICIPATE IN ANY CLASS ACTION OR COLLE TIVE ACTION CREATED BY ANY COURT, ARBITRATOR OR OTHER TRIBUNAL IN ANY PROCEEDING....

(*See* Carrasco's Arbitration Agreements, ECF No. 137-6.)

Ms. Gomez filed an affidavit in opposition, stating that she never signed an arbitration agreement and that the signature on an agreement she purportedly signed was forged. (ECF No. 36-2.) The Court held an evidentiary hearing on August 17, 2015, and determined that Ms. Gomez's signature was in fact forged. (ECF No. 54.) The Court denied Defendants' motion as to Ms. Gomez and granted it as to Ms. Carrasco, staying Ms. Carrasco's claims. (*Id.*)

On August 4, 2015, the Court so-ordered a stipulation of voluntary dismissal as to Lace Entertainment Inc., after finding that it had been sued in error. (ECF No. 42.) On August 6, 2015, the parties filed another stipulation of voluntary dismissal as to Glen Orecchio. (ECF No. 44.)

On November 20, 2015, the Court granted Plaintiffs' unopposed motion for conditional certification of the proposed FLSA Section 216(b) class. (ECF No. 79.) Then, on January 6, 2017, the Court granted Plaintiffs' motion for certification of the NYLL class. *Gomez v. Lace Entm't, Inc.*, 2017 WL 129130 (S.D.N.Y. Jan. 6, 2017).

The parties brought the instant motions on October 26, 2017.

**Arbitration Proceedings**

Following the Court's decision that she must pursue her claims through arbitration, Ms. Carrasco and another Lace employee who signed an arbitration agreement, Theresa Robinson, initiated arbitration proceedings against MLB and Mr. Capeci. (Correspondence from Am. Arbitration Ass'n, ("AAA Letter"), ECF No. 100-15.) Defendants failed to pay the required arbitration fees. As a result, the American Arbitration Association ("AAA") sent the parties in each

arbitration proceeding a letter dated April 13, 2016, informing them that, because MLB and Mr. Capeci "failed to submit payment as requested," the AAA had closed the cases. (*Id.*) The AAA also informed MLB and Mr. Capeci that, due to their failure to comply with the AAA's rules and protocols, the AAA "will decline to administer any future employment matter involving" them. (*Id.*) Finally, the letters "ask [that] [MLB and Mr. Capeci] remove our name from its arbitration agreement so there is no confusion to the public." (*Id.*).

Because Ms. Carrasco and Ms. Robinson were barred from pursuing their claims through arbitration, they now seek to prosecute their claims before this Court. (Mem. Support Pls.' Mot. Summ. J. 2–3, ECF No. 132.)

In addition to Ms. Carassco and Ms. Robinson, twenty-eight of Lace's other waitresses who would otherwise be class members in this case signed identical arbitration agreements. (Decl. of Anthony Capeci Opp'n Pls.' Mot. Summ. J. ("Capeci Summ. J. Decl.") 2–3, ECF No. 137, Exs. 1–30.). The AAA's refusal to process claims involving Defendants means that they, too, are unable to pursue their claims in arbitration.

**Settlement Agreements**

After this action was filed, but before the class was certified, Defendants contacted some of the Club's former waitresses in order to settle privately any employment claims they may have against Defendants. (Capeci Summ J. Decl. 2; Court's October 1, 2015 Order, ECF No. 61.) Defendants contend that they signed such settlement agreements with three waitresses – Marlene Rosario, Danielle Slavis, and Barbara Andre. (Capeci Summ J. Decl. 2.) They attached proof of only two of these agreements – one with Barbara Andre, who received $1,000, and one with Marlene Rosario, who received $500. (Barbara Andre Settlement Agreement 1–2, ECF No. 137-3; Marlene Rosario Settlement Agreement 1–2, ECF No. 137-25.)

6

## DISCUSSION

### I.    Summary Judgment Standard

A party is entitled to summary judgment when there is no genuine issue as to any material fact and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Facts are material when they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has made such a showing, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotation marks omitted). The court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Id.* at 600–01; *see also Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir. 2001). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248.

### II.   Defendants' motion for partial summary judgment is granted in part and denied

#### A.    The motion to dismiss Plaintiffs' uniform claims is granted

Defendants move for summary judgment on Plaintiffs' uniform expense and maintenance claims under the FLSA and NYLL. Plaintiffs do not oppose summary judgment on these claims;

7

they state they have already communicated to Defendants that they would withdraw them. Plaintiffs' claims for uniform expense and maintenance claims are, therefore, dismissed.

### B.    The motion to dismiss Plaintiff's tip misappropriation in part is denied

Defendants also move for summary judgment dismissing a portion of Plaintiffs' tip misappropriation claim: Defendants retained 12.75% of Plaintiffs' credit card tips for themselves; they contend that they were entitled to take 3% to offset the processing fees that credit card companies charged them. Therefore, they argue, the Court should award Defendants summary judgment on that 3% portion. This Court declines to do so.

Under regulations promulgated pursuant to the NYLL, an employer may withhold the employee's "pro-rated share of the service charge taken by the credit card company for the processing of the tip." 12 N.Y.C.R.R. § 146-2.20; *see also Allende v. PS Bro. Gourmet, Inc.*, 2013 WL 11327098, at *5 (S.D.N.Y. Feb. 1, 2013).

While the FLSA does not explicitly permit an employer to withhold portions of a tip to offset credit card fees, courts have read a similar rule into the federal statute. *See Widjaja v. Kang Yue USA Corp.*, 2011 WL 4460642, at 7–8 (E.D.N.Y. Sept. 26, 2011); *Cao v. Wu Liang Ye Lexington Rest.*, 2010 WL 4159391, at *3–4 (S.D.N.Y. Sept. 30, 2010); *Nicholson v. Twelfth Street Corp.*, 2010 WL 1780957, at *2 (May 4, 2010); *Kim v. Kum Gang, Inc.*, 2015 WL 2222438, at *26–27 (S.D.N.Y. Mar. 19, 2015); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 512 (S.D.N.Y. 2017).

The Second Circuit has never addressed the issue, but a number of courts in this circuit have adopted the Sixth Circuit's well-reasoned rule in *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 553–54 (6th Cir. 1999). *See Widjaja*, 2011 WL 4460642, at 7; *Kim*, 2015 WL 2222438, at

8

\*27; *Gamero*, 272 F. Supp. 3d at 512. This Court follows their example and adopts the rule set out in *Myers*.

As the Sixth Circuit held, "an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip, without surrendering its [29 U.S.C.] section 203(m) partial set-off against minimum wages." *Myers*, 192 F.3d at 553. However, the employer bears the burden of proving that its withholdings are reasonable. *Id.* at 554–55. This burden is properly placed on the employer because the employer is "in the best position to know the terms of its own credit card agreements, and it is consistent with the employer's firmly established duties to maintain accurate records for FLSA purposes in other contexts." *Widjaja*, 2011 WL 4460642, at 7. To establish that its deductions were reasonable, the employer must prove that, in the aggregate, it withheld no more than the total cost to it in credit card fees. *Myers*, 192 F.3d at 554–55. That is, "the employer must prove that its total deductions from employees' tip incomes did not enrich it, but instead, at most, merely restored it to the approximate financial posture it would have occupied if it had not undertaken to collect credit card tips for its employees during the relevant period." *Id.* at 555.

Defendants argue that they are entitled to summary judgment as to 3% of Plaintiffs' credit card tips because, according to Defendants, at least one court, in *Kim*, 2015 WL 2222438, at \*27, held that withholding 3% of credit card tips to cover processing fees is reasonable. However, the court in *Kim* did no such thing. Rather, the plaintiffs in that case "concede[d] that a withholding of three percent of credit card tips is reasonable," and the court accepted that concession. *Id.*

The amount an employer may reasonably withhold to cover its credit card fees is a fact-specific inquiry that depends on what the employer was actually charged in credit card fees. *See Myers*, 192 F.3d at 554–55; *Widjaja*, 2011 WL 4460642, at 7. The employers in *Kim*, 2015 WL

9

2222438, at *27, did not present any evidence of the fees they incurred. Whatever led the plaintiffs in that case to concede that a three percent fee was reasonable there does not create a rule that a three percent fee is categorically reasonable.

Defendants further argue that 3% is reasonable here because, they claim, they incurred a minimum of 3.1% in processing fees on credit card transactions. In support of this assertion, Defendants included with their reply brief two merchant statements – one by American Express for the month of August 2017, and one that covers all other credit card companies for the month of January 2017. Defendants did not supply an affidavit with these merchant statements to assist the Court in understanding what the many rows and columns in the statements purport to show. They simply declare that the two merchant statement show that "MLB incurs, at a minimum, a processing fee of 3.1% for non-American Express credit cards and an additional variable discount fee – which covers points and other rewards incentives passed on to consumers – of approximately 1.5%. In addition, for American Express cards, MLB incurs a processing fee of approximately 3.29%." Defs.' Reply Supp. Mot. Partial Summ. J. 2, ECF No. 142. The Court is unable to tell how Defendants arrived at these numbers. Moreover, Plaintiffs have not had the opportunity to respond to Defendants' assertions, because Defendants first included these statements in their reply.

Defendants have not carried their burden at this time to prove that a 3% deduction from Plaintiffs' credit card tips reasonably compensates them for attendant processing fees. Their motion for partial summary judgment is denied. We will sort this out at trial.

## III.   Plaintiffs' motion for partial summary judgment is granted in part and denied in part

Plaintiffs move for partial summary judgment on their minimum wage and tip misappropriation claims under the FLSA and NYLL. They seek a judgment of holding Defendants

10

liable for failing to pay them the minimum wage to which they were entitled and for improperly withholding a portion of their tips. They also seek statutory liquidated damages for their wage claims under both the FLSA, 29 U.S.C. § 216(b), and NYLL, N.Y. Labor Law § 198(1-a).

Plaintiffs also move for summary judgment on their claims that Defendants failed to provide them with statutory notice of their rights under NYLL § 195(1) and (3), and seek statutory damages for the notice violations under NYLL § 198(1-b) and (1-d).

### A.   Plaintiffs' motion for summary judgment is granted on their minimum wage claim and is granted in part and denied in part on their tip misappropriation claim.

The FLSA and NYLL establish minimum wages that employers must pay their employees. *See* 29 U.S.C. § 206; N.Y. Labor Law § 652(1). Under certain conditions, each statute permits employers to pay tipped employees less than the standard minimum wage by allowing employers to credit a portion of the tips their employees receive toward the minimum wage. *See* 29 U.S.C. § 203(m), (t); N.Y. Labor Law § 652(4); 12 N.Y.C.R.R. § 146-2.2 (effective Jan. 1, 2011); *id.* § 137-2.2 (repealed effective Jan. 1, 2011); *see also Shariar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011). There is no dispute that Plaintiffs are covered under these minimum wage provisions and are tipped employees under the FLSA, 29 U.S.C. § 203(t), and NYLL, N.Y. Labor Law § 651(9).

### 1.   Defendants lost their entitlement to claim a tip credit under the FLSA and NYLL by retaining Plaintiffs' tips; Defendants are thus liable to Plaintiffs for unpaid minimum wages and unlawfully retained tips

Under the FLSA, an employer may claim a tip credit if "(1) the tipped employee 'has been informed by the employer of the provisions of this subsection,' and (2) 'all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.'"

*Chung v. New Silver Palace Rest.,* 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (quoting 29 U.S.C. § 203(m)(2)); *see also Shariar*, 659 F.3d at 240. The Second Circuit has explained that this second requirement of § 203(m) means that an employer may not "require[] tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers." *Shariar*, 659 F.3d at 240. By its plain language, section 203(m) also of course prohibits the employer itself from retaining any part of an employee's tip if it wishes to take advantage of the FLSA's tip credit.

Here, Defendants deducted 15% of Plaintiffs' credit card tips for distribution among Lace's barbacks and bartenders and retained 15% of the remaining amount – 12.75% of the total – for the Club. By retaining a portion of Plaintiffs' tips, Defendants lost their entitlement to the tip credit under the FLSA.

While acknowledging that an employer generally may not retain tips for itself, Defendants argue that Plaintiffs are not entitled to summary judgment because Defendants were entitled to withhold some portion of Plaintiffs' tips for the purpose of offsetting their credit card processing fees. There is, Defendants argue, a dispute of material fact as to the amount the Club could reasonably deduct to offset credit card fees.

As the Court discussed above, Defendants were legally entitled to deduct an amount that would reasonably compensate them for the processing fees they incurred. *See supra* Section II; *see also Myers*, 192 F.3d at 554–55; *Widjaja*, 2011 WL 4460642, at 7. And there is indeed a genuine issue of fact over what that amount would be.

However, there is no dispute that Defendants withheld 12.75% from Plaintffs' credit card tips and there is no dispute that this is far more than any amount that Defendants might legally have deducted under the "compensation for processing fees" rule. According to Defendants' own evidence, the most any credit card company charged them in processing fees was 4.5% – well

12

below the 12.75% they took from Plaintiffs' credit card tips. Therefore, it is undisputed that Defendants violated § 203(m) by keeping at least some of their employees' credit card tips for themselves. Plaintiffs are, therefore, entitled to summary judgment on the issue of Defendants' liability; the amount of damages (which is measured by deducting the amount of a reasonable processing fee from the amount withheld) will be determined at trial.

Defendants also forfeited their right to take a tip credit under the NYLL. As with the FLSA, an employer loses its entitlement to the NYLL's tip credit if it improperly retains an employee's tips. *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 290 (S.D.N.Y. 2011); *Marin v. Apple-Metro, Inc.*, 2017 WL 4950009, at *24 (E.D.N.Y. Oct. 4, 2017; *see also* N.Y. Labor Law § 196–d. The NYLL generally prohibits an employer from retaining any portion of its employees' tips, N.Y. Labor Law § 196–d, but permits employers to withhold the "pro-rated share of the service charge taken by the credit card company for the processing of the tip," N.Y.C.R.R. § 146-2.20. As discussed above, Defendants withheld far more than the amount they could permissibly deduct from Plaintiffs' tips.

Accordingly, Defendants are liable for the difference between the wages they actually paid Plaintiffs and the minimum wage at the time under the FLSA, 29 U.S.C. § 206, or NYLL, N.Y. Labor Law § 652, whichever was higher. *See Ayres v. 127 Restaurant Corp.,* 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998); *Chung,* 246 F. Supp. 2d at 229; *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 316–17 (S.D.N.Y. 2014).

Under the NYLL, Defendants are also liable for the amount improperly retained from Plaintiffs' tips – 12.75% of Plaintiffs' credit card tips minus the costs Defendants reasonably incurred in processing fees from tips left on credit cards. *See Kim*, 2015 WL 2222438, at *26–27;

13

*Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, at \*20–21 (S.D.N.Y. Feb. 1, 2007) (Lynch, J.), *abrogated on other grounds by Barenboim v. Starbucks Corp.*, 698 F.3d 104 (2d Cir. 2012).

Plaintiffs are entitled to recover both unpaid minimum wages and unlawfully deducted tips. *See Chan*, 2007 WL 313483, at \*20–21, *abrogated on other grounds by Barenboim*, 698 F.3d 104; *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at \*5 (S.D.N.Y. May 2, 2011) (Report and Recommendation), *adopted by* 2011 WL 2038973, at \*1 (S.D.N.Y. May 24, 2011).

### 2. Defendants did not violate the NYLL by distributing a portion of Plaintiffs' tips to barbacks and bartenders because the barbacks and bartenders were eligible to share in tips

Plaintiffs argue that Defendants' deduction and distribution of 15% of Plaintiffs' credit card tips to barbacks and bartenders at the Club also violated NYLL § 196–d because they were not eligible to share in tips.[2] I disagree.

Section 196–d provides that:

> No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee…. Nothing in this subdivision shall be construed as affecting… the sharing of tips by a waiter with *a busboy or similar employee.*

(emphasis added).

Regulations promulgated by the New York Department of Labor clarify that, for purposes of § 196–d, employees constitute "busboy[s] or similar employee[s]" – and are therefore eligible to share in tips – if they "perform, or assist in performing, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental." 12

---

[2] Because I already concluded that Defendants were not entitled to the tip credit under the FLSA on other grounds, it is not necessary to determine whether requiring Plaintiffs to share their tips with barbacks and bartenders also disqualified Defendants from claiming a tip credit under the FLSA.

N.Y.C.R.R. § 146-14(e); *see also Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 471–72 (2013). Section 146-14(e) gives examples of eligible occupations, including "bartenders," "service bartenders," "barbacks," and "bus persons," among others. However, it also notes that employees' "duties and not titles" dictate their eligibility. § 146-14(e). The operative inquiry remains whether an employee's duties consist of performing or assisting in performing extensive and regular personal service to patrons.

Plaintiffs argue that, despite their titles, the bartenders and barbacks at Lace are not eligible to share in tips, because their actual duties did not include the kind of extensive interaction with patrons contemplated by § 146-14(e). Their argument is unpersuasive.

Where an employee's occupation is specifically listed in § 146-14(e), the Court first considers whether his duties are substantially the same as the duties customarily associated with that occupation. If they are, then the employee is of the type contemplated as eligible to share in tips under the relevant regulations. If not, the Court must evaluate whether the employee's duties cause him/her to "perform, *or assist in performing*, personal service to patrons at a level that is a principal and regular part of their duties and is not merely occasional or incidental." § 146-14(e) (emphasis added).

Section 146-14(e) lists both "service bartenders" and "bartenders" as tip-eligible. "Service bartender" is an industry term for a bartender who fills drink orders, but does not take orders himself (i.e., s/he is not "customer-facing"). A "bartender" is customer-facing. *See Barrera v. MTC, Inc.*, 2011 WL 3273196, at *1 (W.D. Tex. July 29, 2011); *Roussell v. Brinker Int'l, Inc.*,

2008 WL 2714079, at *9 (S.D. Tex. July 9, 2008); *Krause v. C.I.R.,* 1992 WL 95627 (U.S. Tax Ct. May 11, 1992).[3]

Bartenders at Lace primarily fill drink orders and process credit card transactions. (Capeci Dep. 34:9–22.) There are no barstools at the bar, and customers cannot order drinks directly from bartenders; customers must order drinks through waitresses. (Capeci Dep. 33:23–34:8.) Therefore, Plaintiffs argue, bartenders at Lace are not eligible to share in tips.

However, § 146-14(e) specifically states both customer-facing and non-customer-facing bartenders are tip-eligible. Therefore, whichever kind they are, the bartenders at Lace qualify to share in tips.

Section 146-14(e) also lists "barbacks" as eligible employees. The duties of barbacks at Lace include restocking the bar, clearing tables, and "keeping the [Club] neat." (Capeci dep. 35:5–13.) Some barbacks also cleaned the Club after closing. (*Id.* 35:14–25.) These duties are typical of barbacks. *See, e.g.*, *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 453–54 (S.D.N.Y. 2015); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 2009 WL 649014, at *1–2 (Jan. 15, 2009). Lace's barbacks also perform some duties typical of a bus person, which is also listed as an eligible occupation under § 146-14(e). *See, e.g.*, *Silva v. Calle 8, LLC*, 2013 WL 6330848, at *1 (E.D.N.Y. Dec. 5, 2013); *Copantitla*, 788 F. Supp. 2d at 266. Therefore, Lace's barbacks also qualify to share in tips.

Plaintiffs' singular focus on the degree of direct interaction between barbacks and bartenders on the one hand and patrons on the other is misplaced. Under § 146-14(e), it is not only

---

[3] The court in *Montano v. Montrose Restaurant Associates, Inc.*, 800 F.3d 186, 193 n.14 (5th Cir. 2015), found the opposite: that a "service bartender" is customer-facing, whereas a "bartender" simply fills drink orders. This disagreement is immaterial because New York law considers both types of bartenders to be tip-eligible.

employees who themselves "perform" extensive personal service who are eligible to share in tips, but also employees who "assist in performing" that personal service. § 146-14(e). Lace's bartenders and barbacks' duties largely consist of assisting waitresses in providing personal service to the Club's patrons. They, thus, meet the statutory definition for tip eligibility.

Accordingly, Plaintiffs' motion for summary judgement of liability declaring that Defendants' permitting bartenders and barbacks to share in their tips is denied.

Defendants have not cross-moved for summary judgment on this issue. However, district courts have discretion to consider and grant summary judgment on their own. Fed. R. Civ. P. 56(f)(3); *see also Bridgeway Corp. Citibank*, 201 F.3d 134, 139–40 (2d Cir. 2000). Summary judgment dismissing this aspect of Plaintiffs' claim is appropriate here.

Although Rule 56(f)(3) directs courts to give parties notice and reasonable time to respond prior to granting summary judgment *sua sponte*, the Second Circuit has recognized that "district courts have the discretion to grant summary judgment *sua sponte,* even without notice in certain circumstances." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011) (internal alterations and quotation marks omitted) (quoting *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005)). The Court of Appeals cautioned that "Before granting summary judgment *sua sponte,* the district court must assure itself that following the procedures set out in Rule 56 would not alter the outcome." *Id.* It further explained that "Discovery must either have been completed, or it must be clear that further discovery would be of no benefit. The record must, therefore, reflect the losing party's inability to enhance the evidence supporting its position and the winning party's entitlement to judgment." *Id.*

Discovery in this case is complete and the parties have briefed this issue extensively on Plaintiffs' motion. Further briefing would be futile and would not alter the outcome. Accordingly,

the Court grants Defendants summary judgment with respect to Plaintiffs' claim that they were impermissibly required to share 15% of their credit card tips with bartenders and barbacks.

### B.   Plaintiffs' motion for summary judgment on their notice claims is granted.

Plaintiffs move for summary judgment of liability on their claims that Defendants failed to provide them with certain statutorily required notices under NYLL §§ 195(1) and 195(3). That aspect of their motion is granted.

Section § 195(1) requires employers, at the time of hiring, to provide new employees with a notice that details the employee's wages, any allowances the employer intends to claim, and the employer's name, address, and phone number. Section § 195(3) requires employer to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

Defendants acknowledge that they never provided Plaintiffs with the notices required under § 195(1). They further acknowledge that the paystubs they provided Plaintiffs did not list the tip credits they were claiming or the deductions they made from Plaintiffs' credit card tips, as required by § 195(3).

Accordingly, Plaintiffs are entitled to statutory damages under NYLL § 198(1-b) and (1-d). The amount of such damages will be determined at trial.

### C.   Plaintiffs' motion for liquidated damages is granted except as to those liquidated damages under the NYLL for claims accruing before November 24, 2009

Plaintiffs move for liquidated damages under the FLSA and NYLL. The motion is granted under the FLSA; it is granted in part and denied in part under the NYLL

### 1.    FLSA

Under the FLSA, a plaintiff is entitled to liquidated damages equal to actual damages for violations of the statute's minimum wage provisions, unless the defendant can show that "it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. N.Y.C. Health and Hosps. Corp.,* 537 F.3d 132, 150 (2d Cir. 2008) (citing U.S.C. § 216(b)). The employer bears the burden of proving good faith. *Id.*

The Second Circuit has described the burden as "a difficult one," and has emphasized that "double damages are the norm and single damages the exception." *Id.* (internal alterations and quotation marks omitted) (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 142 (2d Cir. 1999)). A showing of good faith "requires more than ignorance of the prevailing law or uncertainty about its development." *Reich v. Southern New England Telecomms. Corp.,* 121 F.3d 58, 71 (2d Cir. 1997). Indeed, "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman,* 172 F.3d at 142; *see also Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987).

Defendants have failed to offer any evidence that could support their good faith defense. Mr. Capeci states that he sought to comply with labor law requirements by "studying the business practices of other people in the industry, having discussions with labor auditors, and reviewing notices he received through accounting websites." (Capeci Dep. 61:5–24.) However, adherence to "prevailing industry practice" is insufficient to establish good faith. *Reich,* 121 F.3d at 71; *accord Brock,* 833 F.2d at 19–20; *Griffin v. Astro Moving & Storage Co.,* 2015 WL 1476415, at *2 (E.D.N.Y. Mar. 31, 2015). And Mr. Capeci's bare assertion that he relied on undisclosed advice from unspecified professionals is also insufficient to raise a genuine issue of material fact as to

good faith or objective reasonableness under federal law. A number of courts have granted plaintiffs summary judgment on liquidated damages where an employer claimed reliance on professional advice, but failed to specify what erroneous advice it received. *See Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015); *Garcia v. JonJon Deli Grocery Corp.*, 2015 WL 4940107, at *6 (S.D.N.Y. Aug. 11, 2015); *Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 678 (S.D.N.Y. 2017); *Copantitla*, 788 F. Supp. 2d at 317. Mr. Capeci has not apprised the court of what misleading advice or information he received from unknown "labor auditors" or unidentified accounting websites that might have rendered Lace's patently illegal payroll practices "objectively reasonable." He has, therefore, not raised a genuine issue of material fact.

Two of my colleagues held that an employer's bare assertion that it relied on the advice of a professional, without more, is enough to raise a genuine issue of material fact. However, in each of those cases, evidence in the record demonstrated an extensive degree of reliance on identified advice. For example, in *Cucu v. 861 Rest. Inc.*, 2017 WL 2389694, at *5 (S.D.N.Y. June 1, 2017), the employer "hired an outside accountant and bookkeeper and would fax the hours and tip wages to the outside accountant on a weekly basis." And in *Franco v. Jubilee First Ave. Corp.*, 2016 WL 4487788, at *16 (S.D.N.Y. Aug. 25, 2016), the employer hired a payroll company, which advised it on compliance with the law. There is no such evidence in this case. Mr. Capeci simply states, in perfunctory fashion, that he had "discussions" with labor auditors and reviewed "notices" from accounting websites. (Capeci Dep. 61:5–24.)

Furthermore, Mr. Capeci is an accountant. (Capeci Dep. 20:6–7, 60:20–61:4.) As a sophisticated employer who is himself a professional, and who had the ability to discern wage requirements, he cannot hide behind vague and conclusory assertions that he reasonably relied on

the advice of others. *See Kim*, 2015 WL 2222438, at \*28; *cf. Genao v. Blessed Sacrament Sch.*, 2009 WL 3171951, at \*11 (E.D.N.Y. Oct. 1, 2009).

### 2. NYLL

The fate of Plaintiffs' motion under the NYLL is a function of when their claims accrued.

For claims that accrued on or after November 24, 2009 – when NYLL's standard was amended to conform to the FLSA's good faith standard – Plaintiffs are entitled to liquidated damages under the NYLL for the same reasons they are under the FLSA. However, the amount of those liquidated damages differs depending on when the claims accrued.

For claims accruing on or after April 9, 2011, the NYLL standard is substantively the same as the FLSA standard. The NYLL provides for liquidated damages equal to actual damages for unpaid wage violations, "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1–a). Although the NYLL's statutory text is not identical to the FLSA's liquidated damages provision, courts have read the two provisions to be substantively the same. *See Inclan*, 95 F. Supp. 3d at 504; *Garcia*, 2015 WL 4940107, at \*6; *Valle*, 254 F. Supp. 3d at 679. Therefore, for violations occurring during that period, double damages (subject to the "no double recovery" rule discussed below) are the norm.

For claims accruing between November 24, 2009 and April 8, 2011, the good faith standard is also identical to the federal standard, but the plaintiff is only entitled to liquidated damages amounting to 25% of her actual damages for unpaid wages. *Inclan*, 95 F. Supp. 3d at 505 (citing 2009 N.Y. Laws ch. 372 § 1, *amending* N.Y. Labor Law § 198(1–a)).

However, for claims that accrued before November 24, 2009, the standard is different. Under the NYLL as it existed at that time, a plaintiff is entitled to 25% of her actual damages in

21

liquidated damages only if she can prove that the employer's violations were "willful." *Inclan*, 95 F. Supp. 3d at 504 (quoting N.Y. Labor Law § 198(1–a) (version effective prior to November 24, 2009). A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Conduct that is "merely negligent" or "unreasonabl[e]" is not willful. *McLaughlin*, 486 U.S. at 133 & 134 n.13.

Most significant for our purposes, under the NYLL's "willfulness" standard in force during prior to November 24, 2008, a defendant's bare assertion that he relied on the advice of professionals *is* sufficient to raise a genuine issue of material fact, because the plaintiff bears the burden of proof. *See Inclan*, 95 F. Supp. 3d at 503–04; *Valle*, 254 F. Supp. 3d at 677–78. Mr. Capeci states in his affidavit that he "stud[ied] the business practices of other people in the industry, ha[d] discussions with labor auditors, and review[ed] notices he received through accounting websites." (Capeci Dep. 61:5–24.) Thus, in addition to consulting professionals, Mr. Capeci also did some of his own research online in an attempt to discern wage requirements.

If any plaintiff asserts claims under the NYLL for wage and hour violations occurring prior to November 24, 2009, the issue of willfulness during that earliest period will have to be tried.

**Double Recovery**

Some courts in this circuit have held that employees are entitled to recovery of liquidated damages under both federal and state law because each serves a different purpose. *See, e.g.*, *Gurung v. Malhotra,* 851 F. Supp. 2d 583, 593–94 (S.D.N.Y. 2012); *Santillan v. Henao,* 822 F. Supp. 2d 284, 297 (E.D.N.Y. 2011). However, at least since the 2009 amendment that brought the FLSA and NYLL's good faith standards into conformity, the Second Circuit has held that

22

employees are not entitled to double recovery, because the statutes' purposes are now aligned. *Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60–61 (2d Cir. 2016); *see also Valle*, 254 F. Supp. 3d at 679. Therefore, Plaintiffs are not entitled to double recovery of liquidated damages for the same type of damages. *See Chowdhury*, 666 F. App'x at 60–61; *see also Valle*, 254 F. Supp. 3d at 679. They may recover liquidated damages for unpaid minimum wages under either the FLSA or NYLL, whichever provides for a greater recovery. *See Morales v. Mw Bronx, Inc.*, 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016).

Plaintiffs are, however, entitled to liquidated damages on both their unlawful retention of tips claim and their failure to pay minimum wages claim, because these are two separate and distinct violations of law. *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *7, *adopted by* 2011 WL 2038973, at *1; *see also Chan*, 2007 WL 313483, at *20–21, *abrogated on other grounds by Barenboim*, 698 F.3d 104.

## D.   Statute of limitations

Under the FLSA, a claim for unpaid minimum wages or liquidated damages must be brought within two years of the claim's accrual, or three years, if the plaintiff proves that the employer's violation was willful. 29 U.S.C. § 255(a). The plaintiff bears the burden of proving willfulness. *See Inclan*, 95 F. Supp. 3d at 504. The meaning of "willful" under the FLSA's statute of limitations provision is substantially the same as that under NYLL's liquidated damages provision. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011); *see also Inclan*, 95 F. Supp. 3d at 504–05.

For the same reasons discussed above in addressing willfulness under the NYLL's liquidated damages provision, the issue of willfulness will be determined at trial.

23

Under the NYLL, claims must be brought within six of their accrual. N.Y. Labor Law § 198(3).

### E.   Defendants cannot enforce the arbitration agreements because they materially breached the agreements

This Court's prior decision certifying the class in this case left open whether waitresses who signed arbitration agreements that included class and collective action waivers could prosecute their claims against Defendants as part of the class. *See Gomez*, 2017 WL 129130. Defendants argue that those employees should now be excluded from the class.

Class and collective action waivers of work-related claims are generally enforceable. *See Epic Sys. Corp. v. Lewis*, 2018 WL 2292444 (U.S. May 21, 2018); *see also Patterson v. Raymours Furniture Co.*, 659 F. App'x 40, 43 (2d Cir. 2016) (citing *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013)). If the arbitration/no class action clauses signed by the putative class members were enforceable, individuals who signed those agreements – thirty women in all – would be remitted to bringing individual arbitration claims before the American Arbitration Association.

However, in this case, the thirty Plaintiffs cannot bring claims to the AAA, because the AAA has already dismissed two cases due to Defendants' failure to abide by its rules and has announced prospectively that it will not arbitrate any employment-related claims for Defendants. Defendants have, therefore, materially breached the agreements, rendering them incapable of performance and excusing the thirty signatory Plaintiffs from abiding by those now unenforceable waivers.

With respect to Plaintiffs Carrasco and Robinson, Defendants' material breach is clear. After Defendants moved to compel arbitration, Carrasco and Robinson initiated arbitration proceedings with the AAA against Defendants in accordance with the arbitration agreements they signed. Defendants, however, refused to pay the required arbitration fees to the AAA. As a result,

the AAA closed Carrasco and Robinson's cases without adjudicating them. This left them without their bargained-for remedy for redress of Defendants' egregious violations of law.

A breach is material when it "substantially defeats the purpose of that contract." *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997) (internal quotation marks omitted). The AAA's refusal to arbitrate Carrasco and Robinson's claims means that they cannot prosecute their claims in accordance with the arbitration agreements. If Carrasco and Robinson could not sue, they would have no remedy, because the agreed arbitrator has refused to hear their cases, due to Defendants' misconduct. Since they cannot arbitrate, they must be allowed to sue. *See Nadeau*, 251 F. Supp. 3d at 641–42; *Spano v. V & J Nat'l Enters., LLC*, 264 F. Supp. 3d 440, 458–59 (W.D.N.Y. Aug. 30, 2017).

Moreover, Carrasco and Robinson can participate in this class action. A material breach allows the non-breaching party to treat the contract as ended, and excuses further performance by that party. *See Nadeau v. Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017). A party that materially breaches a contract "cannot then enforce that contract against a non-breaching party." *Id.*; *accord Shatkin v. Jason*, 2008 WL 11363383, at *4 (W.D.N.Y. Aug. 1, 2008); *Mun. Capital Appreciation Partners, I, L.P. v. Page,* 181 F.Supp.2d 379, 392 (S.D.N.Y.2002). Since Carrasco and Robinson have indicated that they will treat the contract as ended, there is no class action waiver left for Defendants to enforce. The entire contract is at an end; the entire contract is unenforceable by Defendants.

As for the other twenty-eight signatories: by refusing to comply with AAA rules and getting themselves barred from appearing before the AAA in employment matters, Defendants repudiated their agreements with all the other waitresses who signed arbitration agreements.

25

At the same time it dismissed Carrasco and Robinson's complaints without adjudication, the AAA also notified the parties that the AAA "will decline to administer any future employment matter involving respondent [MLB Enterprises, Corp. and Anthony Capeci]." (AAA Letter.) The AAA letter went on to "ask [that] the respondent remove our name from its arbitration agreement so there is no confusion to the public." (*Id.*).

A party to a contract repudiates his agreement if he "voluntarily place[s] himself in a position that renders[] it impossible for him to perform his contractual duties." *Scaduto v. Orlando*, 381 F.2d 587, 593 (2d Cir. 1967); *accord Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 587–88 (2d Cir. 2005); Restatement (Second) of Contracts § 250(b). Arbitration agreements are contracts. *Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 149–50 (2d Cir. 2014). The Federal Arbitration Act specifically provides that "otherwise-valid arbitration agreements can be rendered unenforceable based 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Nadeau*, 251 F. Supp. 3d at 641 (quoting 9 U.S.C. § 2).

The arbitration agreements here require the parties to resolve any disputes or claims "before the American Arbitration [Association] ('AAA')… pursuant of the AAA's rules." (Arbitration Agreements, ECF No. 137, Exs. 2–30.) Thus, using the AAA as the adjudicator and the AAA's rules as the governing rules are integral aspects of these arbitration agreements. Defendants' refusal to pay the AAA's fees – which resulted in a ban on Defendants' use of the AAA's services for any employment-related arbitration – constitutes a repudiation of all thirty of the agreements that Defendants foisted on their employees, because the contract signed by the employees (a contact whose terms were dictated by Defendants) cannot be performed. Plaintiffs did not agree to arbitrate before just anyone; they only agreed to arbitrate in front of the AAA. They cannot

26

arbitrate before the AAA because the AAA will not participate in arbitrations involving Defendants, due to Defendants' own misconduct.

As with any other material breach, repudiation entitles the nonrepudiating party to treat the breach as a total breach. *Mattis v. Zheng*, 2006 WL 3155843, at \*4 (S.D.N.Y. Oct. 27, 2006); *Marvel Entm't Grp., Inc. v. ARP Films, Inc.*, 684 F. Supp. 818, 820 (S.D.N.Y. 1988); Restatement (Second) of Contracts § 250(b). If the nonrepudiating party chooses to treat it as a total breach, the repudiation "discharges the [nonrepudiating] party's remaining duties to render performance," as with any material breach. Restatement (Second) of Contracts § 253(2); *accord Mattis*, 2006 WL 3155843, at \*4; *Mindel v. Image Point Prods., Inc.*, 725 F. Supp. 189, 194 (S.D.N.Y. 1989). Indeed,

Defendants materially breached the arbitration agreements and cannot, now, selectively enforce them against Plaintiffs. They must litigate. And they must litigate against a class if the Plaintiffs choose to pursue their claims collectively.

Nothing in *Epic Sys. Corp.*, – S. Ct. –, 2018 WL 2292444 (2018) is to the contrary. In that case, the Supreme Court held that an employer could enforce a ban against bringing class claims against employees who had signed enforceable arbitration agreements. Nothing in the facts of *Epic* suggested that the employer had breached or rendered performance of the arbitration agreement impossible, as is the case here; and nothing in *Epic Sys. Corp.* suggests that the court would sever and enforce a class waiver provision if it were part of an agreement that was materially breached and/or repudiated, and if the other party to that agreement decided, as was her right, to treat the entire agreement as at an end.

To the extent that *Spano*, 264 F. Supp. 3d at 460–61, reached a contrary conclusion – that an employer can enforce a class waiver provision in a contract it materially breached – the Court

declines to follow it.[4] This Court adheres to the rule that a materially breaching party cannot enforce a contract against a non-breaching party. Accordingly, any plaintiff who signed the agreements may prosecute her claims as part of this action if she wishes to do so.

That said, there may be signatories to the now-non-performable arbitration agreements who would not choose not to treat their contract as entirely ended, even though they have the right to do so as a result of Defendants' repudiation. Plaintiffs' counsel needs to canvas the twenty-eight affected women and obtain affidavits indicating whether the women wish to participate in this class action lawsuit, or whether they want to bring their own individual lawsuits (which they may do, since they may not arbitrate their employment-related claims before the AAA). There may be individuals who do not wish to treat their arbitration agreement with Defendants as being at an end. That is up to each individual employee. Plaintiffs have 20 days from the date of this opinion to obtain the necessary affidavits from putative class members who signed arbitration agreements and class waivers.

### F.    Plaintiffs who signed settlement agreements are not barred from prosecuting their claims in this action

Defendants seek to preclude three plaintiffs – Marlene Rosario, Danielle Slavis, and Barbara Andre – from continuing to prosecute their claims in court because, according to Defendants, these plaintiffs signed binding agreements resolving their claims. Defendants acknowledge that such settlements of FLSA claims ordinarily require judicial or Department of Labor approval. *See Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Scherzer v. LVEB, LLC*, 2015 WL 7281651, at *1 (E.D.N.Y. Nov. 16, 2015); *Redzepagic v.*

---

[4] *Spano*, 264 F. Supp. 3d at 458–59, is consistent with the decision here that an employer that materially breaches an arbitration agreement cannot then enforce the arbitration provision and compel arbitration.

*Hammer*, 2017 WL 780809, at \*4 (Feb. 27, 2017); *Archer v. TNT USA, Inc.*, 12 F. Supp. 3d 373 (E.D.N.Y. 2014). But, they contend, approval of the settlements is not required here.

As an initial matter, Defendants have only provided the Court with settlement agreements signed by Barbara Andre and Marlene Rosario. Therefore, Danielle Slavis may proceed with her claims.

With respect to the Barbara Andre, Defendants assert in their brief that she stopped working on August 31, 2012, more than two years before this action was brought. Therefore, Defendants argue, any FLSA claims she may have had are barred by the statute's two-year statute of limitations. However, Defendants have not provided the Court with, and the record is devoid of, any *evidence* of Ms. Andre's last day of employment. The Court cannot simply accept a lawyer's say-so in a brief to support an award of summary judgment.

Moreover, Plaintiffs likely will seek to prove at any future trial that Defendants' FLSA violations were willful, which would extend the statute of limitations by a year, to April 29, 2012, and bring a portion of Ms. Andre's claims within the FLSA's statute of limitations.

As for Ms. Rosario, Defendants argue that their agreement with her was not a "settlement" that required judicial or Department of Labor approval, because the $500 dollars she received was a payment in full for her FLSA claims, even by Plaintiffs' own calculations.

What that means is that Ms. Rosario has the right to pursue her claim, because she has not settled it – she has simply accepted a gratuitous partial payment of a portion of what Defendants concede she is owed. Plaintiffs have acknowledged, and the law requires, that any payment Defendants have already made to any plaintiff in this case as part of an unapproved settlement of FLSA claims must be applied as a partial payment on any future judgment that plaintiff obtains. *See Liu v. Jin Jin Commerce Corp.*, 2011 WL 135839, at \*2 (S.D.N.Y. Jan. 10, 2011) (quoting

29

*Gangi v. D.A. Schuite*, *Inc.*, 150 F.2d 694, 697 (2d Cir. 1945) *aff'd* 328 U.S. 106). Therefore, is Ms. Rosario receives an award of, say, $1500, she can only collect $1000, because she has already been paid $500.

## CONCLUSION

For the reasons stated above, Defendants' motion is GRANTED in part and DENIED in part; Plaintiffs motion is GRANTED in part and DENIED in part.

Plaintiffs are directed to obtain affidavits from putative class members who signed arbitration agreements and class waivers by June 25, 2018, in accordance with the Court's directions *supra*, at 28.

The Clerk of Court is directed to terminate the motions at Docket Numbers 127 and 131.

The Clerk of Court is further directed to terminate Glen Orecchio as a party in this action, pursuant to Plaintiffs' stipulation of voluntary dismissal of Mr. Orecchio under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. (ECF No. 44.)

The Clerk of Court is further directed to change the caption of this case to reflect the dismissal of Lace Entertainment, Inc. from this action. (ECF No. 42.) The caption of this case should conform to the caption used by the court at the head of this decision and order.

This constitutes the decision and order of the court.

Dated: June 5, 2018

_____
Chief Judge

BY ECF TO ALL COUNSEL